## AFFIDAVIT

 I, Ryan Zornes, being duly sworn, state under oath that:

1.      I am a Senior Special Agent/Certified Fire Investigator (SSA/CFI) with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since November 2001.  I am currently assigned to the Kansas City Field Division, Kansas City, Missouri, Group II, Field Office, and investigate incidents involving the criminal use of fire.

2.      From my participation in this investigation of the attempted use of fire to burn a building used in interstate commerce or foreign commerce as well as from reviewing investigative reports and from discussions with other law enforcement officers, I have learned the following information:

3.      I know from my previous training and experience that pursuant to Title 18, United States Code, Section 844(i), that it is unlawful for anyone to maliciously damage or destroy, or attempt to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce.

4.      This Affidavit contains information necessary to support probable cause for this application.  It is not intended to include every fact or matter observed by me or known by law enforcement.  The information provided is based on my personal knowledge and observation during the course of this investigation, information conveyed to me by other law enforcement officials, and my review of records, documents, and other physical evidence obtained during the investigation.

5.      During the last week of March 2019, a confidential informant, hereinafter referred to as the "C/I," was contacted by Mia Lee JAMISON.  The C/I reported to law enforcement that JAMISON approached the C/I and inquired about JAMISON's desire to burn a building that JAMISON owned in Kansas City, Missouri.  During that same week, the C/I met JAMISON at her residence located at 6413 North Park Avenue, Gladstone, Missouri, located within the Western District of Missouri.  JAMISON and the C/I met at JAMISON's residence to further discuss JAMISON's request.  When the C/I met with JAMISON at her residence, JAMISON asked the C/I if he/she or someone the C/I knew, would be interested in burning a building JAMISON owned.  JAMISON identified the building as "Mia Plaza."

6.      During the meeting at JAMISON's residence, the C/I told JAMISON he/she was not interested in burning her building but knew someone who would be.  JAMISON offered to pay the C/I a finder's fee of $1,000 if he/she found someone that would be interested in her request.

7.     On April 23, 2019, the C /I and an ATF Agent, acting in an undercover capacity, hereinafter referred to as the "U/C," met with Mia Lee JAMISON at her residence located at 6413 North Park Avenue, Gladstone, Missouri. During the meeting, JAMISON told the ATF U/C that JAMISON owned a building that needed to be destroyed. JAMISON stated she was going to be losing ownership of the building. JAMISON also told the U/C that she had a $1,500,000 insurance policy on the building. JAMISON indicated the insurance policy was worth more than the value of the building. JAMISON told the U/C that the building was located at 1726 West 39th Street in Kansas City, Missouri – an address located within the Western District of Missouri.

8.     During the meeting with the U/C on April 23, 2019, JAMISON instructed the U/C to destroy her building by burning it down. JAMISON asked the U/C if he/she had ever failed at burning buildings. JAMISON also asked the U/C if he/she would be able to get all of the building. During the conversation with JAMISON, the U/C asked JAMISON if she wanted the fire to look like an accident. JAMISON agreed indicating she wanted the fire to appear to look like an accident. At JAMISON's request, the U/C agreed to set the fire between the hours of 3:00 a.m. and 5:00 a.m., in an effort to limit the risk to the tenants who were more likely to be in the building during business hours. During this initial meeting between JAMISON and the U/C, JAMISON repeatedly asked the U/C if he/she was recording their conversation.

9.     At the conclusion of the meeting on April 23, 2019, the U/C informed JAMISON that the fee to burn her building would be ten percent of the $1,500,000 insurance payout or $150,000 cash. JAMISON quickly agreed to pay this fee for burning down the building located at 1726 West 39th Street, Kansas City, Missouri. JAMISON indicated that once she received the insurance payment from the destruction of the building that she would pay the U/C the sum of $150,000. JAMISON and the U/C also agreed that JAMISON would make a $5,000 cash down payment to the U/C. They agreed that JAMISON would pay the down payment to the U/C prior to setting the fire at the building owned by JAMISON. JAMISON and the U/C also agreed to meet at a later date so JAMISON could take the U/C to the building that JAMISON wanted burned. JAMISON also agreed to pay the U/C the initial $5,000 cash down payment during their second meeting.

10.    On April 24, 2019, the same U/C met Mia JAMISON again at JAMISON's residence located in Gladstone, Missouri. JAMISON directed the U/C to drive her to a bank so JAMISON could withdraw cash from her account to pay the U/C. JAMISON directed the U/C/ to her bank and the U/C drove JAMISON to the U.S. Bank, located at 6098 Northeast Antioch Road, Kansas City, Missouri, located within the Western District of Missouri. JAMISON entered the bank and when she completed her banking transaction she returned to the U/C's vehicle. JAMISON then directed the U/C to drive JAMISON to her building located near the intersection of West 39th Street and Bell Avenue in Kansas City, Missouri. While the U/C and JAMISON drove around the commercial building JAMISON reportedly owned, JAMSION told the U/C she wanted him/her to burn the entire

2

smaller building and to only partially burn or damage the attached larger building so she could potentially remodel the larger building. The U/C informed JAMISON that he/she could not guarantee that he/she could minimize the damage to the larger portion of the building due to the uncontrollability of the fire, but the U/C would do his/her best to satisfy JAMISON's request. After JAMISON and the U/C completed their reconnaissance of the building JAMISON identified to destroy by fire, the U/C and JAMISON drove back to JAMISON's residence in Gladstone, Missouri. While at JAMISON's residence, JAMISON paid the U/C a sum of $3,500 in cash as a partial down payment. JAMISON indicated that $3,500 was all the money she had. At the conclusion of the meeting, JAMISON and the U/C agreed to meet one more times on April 30, 2019, before the U/C would burn JAMISON's building as JAMISON had requested.

11.     During the first and second meetings between JAMISON and the U/C, JAMISON indicated that she had previously discussed burning her building down with another potential arsonist. JAMISON indicated she had this conversation prior to contacting the C/I and ultimately being introduced to the U/C. JAMISON indicated that she had asked that person if he/she was willing to burn her building. Later, JAMISON indicated she decided to find someone else to follow through with her solicited request.

12.     Below are three photographs of the building that JAMISON hired and subsequently paid the U/C to destroy by intentionally setting a fire. Investigators captured the attached photographs on April 28, 2019. The photographs depict the building as it currently appears. The first and second photographs depict the west side of the building that encompasses the addresses 1726 through 1722 West 39th Street and is the smaller portion of the building that JAMISON indicated to the U/C that she wanted to ensure would be totally destroyed by the fire. The third photograph depicts the east side of the building that encompasses the addresses 1716 through 1714 West 39th Street and is the side of the building that JAMISON indicated she

hoped the U/C could only partially burn or damage so that JAMISON could later remodel the partially damaged section.



Bob Wasabi Kitchen
1726 West 39th Street, Kansas City, Missouri 64111



World of Spirits
1722 West 39th Street, Kansas City, Missouri 64111

4



Vacant Occupancy
1716 West 39th Street, Kansas City, Missouri 64111

Sahara Sheesha Lounge
1714 West 39th Street, Kansas City, Missouri 64111

13. During the afternoon of April 26, 2019, Mia Lee JAMISON contacted the U/C and informed him/her that she would need her building burned before Monday, April 29, 2019, because JAMISON discovered she would no longer own her building after that day due to an ongoing civil suit. JAMISON indicated during her conversation with the U/C that she would be willing to pay the U/C more money than what JAMISON and the U/C had originally agreed to because she was accelerating the date to destroy the building. At the conclusion of the conversation, JAMISON and the U/C agreed to meet on April 28, 2019.

14. On April 28, 2019, the U/C met with JAMISON for a final time at her residence in Gladstone, Missouri. During the final meeting, the U/C informed JAMISON that the U/C had examined the building JAMISON wanted the U/C to destroy by fire. The U/C indicated that while inspecting the building he/she also looked at the roof of the building. The U/C indicated that after inspecting the building the U/C was ready to burn JAMISON's building that night if JAMSION still wanted the U/C to proceed with the arson. JAMISON told the U/C that she wanted him to follow through with the previous arrangement to burn her building. The U/C told JAMISON that because of the weather forecast for rain it may be more difficult for the U/C to control the fire once the U/C initiated it because the U/C would have to compensate for the structure being wet to ensure it would burn. The U/C told JAMISON that this factor would more than likely lead to the destruction of her entire building instead of only destroying a portion of the structure as JAMISON had previously requested. JAMISON acknowledged she was okay with the entire building burning down if that is ultimately what occurred once the fire was set.

5

15.     As the U/C and JAMISON discussed burning her building, JAMISON told the U/C that she had gone to her building to remove the video surveillance cameras in preparation for the fire. JAMISON indicated that she removed the video surveillance cameras on her own accord since the last meeting with the U/C. JAMISON also again confirmed that she would pay the U/C $150,000 for burning her building after she received her insurance payment, which was part of her $1,500,000 insurance policy. JAMISON and the U/C also discussed how JAMISON would pay the U/C. JAMISON indicated she would pay the U/C by either making several $8,000 dollar cash payments or by writing checks to the U/C's contracting company so the payments appeared as though they were for work being done on JAMISON's house and not as payment for the arson. Throughout the U/C meeting with JAMISON, the U/C asked JAMISON several times if she still wanted the U/C to burn her building down. In response to these inquiries, JAMISON said yes each time indicating that JAMISON wanted the U/C to destroy her building by burning it.

16.     A review of the Jackson County, Missouri Property Tax Database for the commercial building located at 1726 West 39th Street in Kansas City, Missouri, revealed the property was owned by K & K INC. The property tax database also revealed the commercial property JAMISON intended to have burned encompassed the addresses of 1726, 1722, 1716, and 1714 West 39th Street, Kansas City, Missouri 64111.

17.     A review of the Missouri Secretary of State database revealed that K & K INC's registered agent was listed as Mia JAMISON with an address of 6413 North Park Avenue, Gladstone, Missouri 64118, which has previously been identified by law enforcement as JAMISON's residence.

18.     On April 28, 2019, investigators visually confirmed a wine, liquor, and grocery store doing business as "39th World of Spirits" which is depicted in the second photograph contained within this Affidavit, was open and operating as a commercial business. Investigators also confirmed that the wine, liquor, and grocery store was located on the west side of the structure within the smaller portion of the building that JAMISON indicated to the U/C that she wanted him/her to completely destroy by fire. This store sells wine, liquor and groceries to its patrons.

19.     After the final U/C meeting on April 28, 2019, investigators confirmed by telephone that the 39th World of Spirits Liquor Store located at 1722 West 39th Street, Kansas City, Missouri, which occupies a portion of the building owned by JAMISON, sold Jameson Irish Whisky. Jameson Irish Whisky is a whisky that is manufactured in Dublin, Ireland, that would have necessarily been transported through foreign and interstate commerce, as the whisky is currently located within the Western District of Missouri.

20.     A hookah lounge doing business as "Sahara Sheesha Lounge" is also operating at the building JAMISON indicated to the U/C that JAMISON wanted to destroy by fire.  The Sahara Sheesha Lounge is depicted in the third photograph contained within this affidavit and is located at 1714 West 39th Street, Kansas City, Missouri. This hookah lounge is located on the East side of the building and was observed by investigators to be open and operating on April 28, 2019.  This business appears to sell flavored tobacco and beverages to its patrons.

21.     A restaurant doing business as "Bob Wasabi Kitchen" is also operating at the building JAMISON indicated to the U/C that JAMISON wanted to destroy by fire. The restaurant is depicted in the first photograph contained within this affidavit and is located at 1726 West 39th Street, Kansas City, Missouri.  The restaurant appeared to be closed for the day when investigators observed the business on April 28, 2019.

22.     Law enforcement recorded all of the meetings between JAMISON and the U/C by either audio or video recording equipment, or both.

23.     On April 29, 2019, at approximately 4:00 a.m., investigators made contact with Mia Lee JAMISON at her residence in Gladstone, Missouri, to conduct a ruse interview related to JAMISON's solicited request to have her building intentionally burned. Investigators confirmed that JAMISON was the owner of the building located on West 39th Street that contained a sushi restaurant and a liquor store, which JAMISON admitted she owned through K & K INC.  Investigators initially told JAMISON that the larger (East) portion of her building had been completely destroyed by a fire and the smaller (West) portion that contained the business investigators identified as "Bob's Wasabi Kitchen," and the "39th World of Spirits" was only partially damaged.  JAMISON verbally indicated she was shocked to hear that her building had been damaged by fire.

24.     During the interview, which was audio recorded, JAMISON stated she had owned the building since 1985 or 1986.  JAMSION added that the smaller (West) section of her building where Bob's Wasabi Kitchen and the liquor store was located was newer and had been rebuilt after the original building located in the same location had been destroyed by a fire in 1990.

25.     JAMISON told investigators that she had a $2,000,000 dollar insurance policy on the building and provided a copy of the insurance policy she retrieved for investigators during the interview.  A review of the insurance policy for K & K, INC., policy number 2AA137247, had an effective date of June 21, 2018, and was underwritten by White, Grego & White Insurance located at 10034 N. Ambassador Drive, Kansas City, Missouri, and was bound by Evanston Insurance Company/M J Kelly.  The policy limit for building coverages was listed as $1,600,000 and covered the building located at 1714, 1716, 1722, 1724, and 1726 West 39th Street, Kansas City, Missouri.

26. JAMISON told investigators that she leased space to Bob Wasabi's Kitchen, 39th World of Spirits, and the Hooka Lounge, however, she was not currently receiving the rent payment directly. JAMISON indicated that her situation was complicated as she was currently involved in a civil suit related to the rent.

27. When JAMISON was asked if her building had a video surveillance system, JAMSION admitted that she went by the liquor store on Friday to retrieve a video cord from an older video surveillance system she had inside the liquor store but she could not elaborate on whether the video recording system still worked after she left.

28. Toward the end of the ruse interview, investigators told JAMISON that the fire was intentionally set and originated in the ceiling of the sushi restaurant near the cooking equipment. JAMISON again indicated she was shocked to hear that the fire was intentionally set. Investigators then asked JAMISON if she set the fire or if she had hired anyone to set the fire at her request. JAMISON denied setting the fire herself and stated she was at home asleep. JAMISON also denied hiring anyone to set the fire for her.

29. Investigators then told JAMISON that her building had not actually been damaged by a fire and was still standing. JAMISON appeared to be relieved to hear that her building had not been destroyed and told investigators that was a good thing. After JAMISON was informed her building had not been damaged, JAMISON was advised of her rights per *Miranda* rights. JAMISON indicated she no longer wanted to answer any questions without a lawyer present after JAMISON expressed confusion as to why investigators were accusing her of setting the fire if a fire had not occurred.

30. Based on my training, experience, and knowledge of this investigation, I believe there is probable cause to conclude that Mia Lee JAMISON maliciously attempted to damage and destroy, by means of fire and explosive materials, the building located at several addresses including 1726, 1722, 1716, and 1714 West 39th Street, Kansas City, Missouri, including the real property and personal property at that location, to wit: the building at that location that contains three commercial businesses, and commercial equipment and business inventory contained in the building, used in interstate and foreign commerce and in activities affecting interstate and foreign commerce, all in violation of Title 18, United States Code, Section 844(i).

The aforementioned violations occurred in the City of Gladstone, County of Clay and Western District of Missouri.

RYAN ZORNES
Senior Special Agent / Certified Fire Investigator
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to before me
this 29th day of April, 2019.

HONORABLE JOHN T. MAUGHMER
United States Magistrate Judge
Western District of Missouri

9